FILED
At 11:35 O'Clock P M
JAN 14 2011
LYNN STILLWELL
PHILLIPS COUNTY CIRCUIT CLERK
BY_____D.C.

IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS
CIVIL DIVISION

| | |
|---|---|
| LAKESIA CHANDLER, ) | PLAINTIFF |
| INDIVIDUALLY, AND AS ) | |
| NEXT FRIEND TO MINOR ) | |
| JASMINE DAVIS ) | |
| ) | |
| v. ) | CASE NO. CU-2011-18 |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| L'OREAL, USA, INC., ) | |
| L'OREAL USA PRODUCTS, INC., AND ) | |
| WAL-MART STORES, INC. ) | DEFENDANTS |

## COMPLAINT FOR DAMAGES
## AND FOR *EX PARTE* TEMPORARY RESTRAINING ORDER

COMES NOW, LaKesia Chandler, Individually and on behalf of her daughter Jasmine Davis, a minor child, by and through counsel Kelley|Witherspoon, LLP, and for her cause of action, states as follows:

### I. PARTIES

1. Plaintiff, Jasmine Davis (hereinafter, "Plaintiff" and "Jasmine"), is and was at all relevant times a citizen of Phillips County, Arkansas.

2. Plaintiff is a minor child herein represented by her mother, Ms. LaKesia Chandler (hereinafter, "mother").

3. The mother brings this suit in accordance with Rule 17(b) of the Arkansas Rules of Civil Procedure.

4. Defendant L'Oreal USA, Inc. (hereinafter, "L'Oreal") is a New York Corporation located at 575 5th Avenue, New York, doing business there and throughout the United States. This corporation is a United States subsidiary of L'Oreal, a French corporation. L'Oreal sells its products through a variety of mediums, including chain retailers, specialty

Davis vs. L'Oreal – Page 1

retailers, and wholesalers. L'Oreal claims to control 15% of the worldwide cosmetics market with sales in excess of $15 billion dollars. In recent years, in North America alone, L'Oreal has averaged $2.1 billion dollars in sales for its consumer's cosmetics and beauty products division. L'Oreal manufactures, markets and distributes such brands as Maybeline New York, Ralph Lauren, Redken, Lancome, Vichy, and L'Oreal Paris. Websites are maintained by L'Oreal that reach out, inter alia, through the United States, Europe, and most of the world.

5. L'Oreal is, and was at all times herein referenced, the owner of the product known as "Garnier Fructis Anti-Frizz Sleek & Shine Serum" (hereinafter, "Serum") which is at issue in this lawsuit. During the relevant period, L'Oreal manufactured, imported, and/or distributed the concerned Serum product, which contained chemicals that proved to be flammable.

6. L'Oreal USA, Inc. is a corporation doing business in the state of Arkansas. Defendant L'Oreal USA Products, Inc. may be served through registered agent Corporation Service Company at 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201.

7. L'Oreal USA Products, Inc. is a corporation doing business in the state of Arkansas. Defendant L'Oreal USA Products, Inc. may be served through registered agent Corporation Service Company at 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201.

8. Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation whose principal place of business is at 702- SW 8th Street, Dept. 8687, Bentonville, AR 72716, has at all times relevant to this litigation conducted business in this State. Defendant Wal-Mart Stores, Inc. can be served via registered agent The Corporation Company at 124 West Capitol

Avenue, Suite 1900, Little Rock, Arkansas 72201

## II. JURISDICTION

9. This Court has jurisdiction over L'Oreal. L'Oreal transacts business within the State of Arkansas, its tortuous acts giving rise to this action occurred in Arkansas, the injuries suffered by Plaintiff as a result of this tortuous act occurred in Arkansas.

## III. VENUE

10. This Court is the proper venue because Plaintiff resided in Phillips County, Arkansas at all relevant times and the cause of action originated in said county.

## IV. FACTS

11. This lawsuit arises out of the permanent disfigurement and severe third-degree burns Plaintiff sustained while using the Serum on or about September 21, 2010 while she was doing her hair at home.

12. Thirteen year-old Jasmine Davis, an 8th grader in West Helena, Arkansas was using L'Oreal's Serum on September 21, 2010 at 5:30 p.m. Shortly after using the Serum, Jasmine applied a straightening comb to her head for the purpose of straightening her hair. Immediately after applying the straightening comb Jasmine's head, arms, and upper body became engulfed in flames. While on fire, Jasmine ran out of her home in an effort to rid her body of flames. Fortunately, a passerby put out the fire and saved her life.

13. Jasmine's mother arrived at her home to witness numerous emergency personnel and a severely burned young woman receiving medical care. After questioning whether an ambulance had been called to help the young woman, she was informed that the young woman, burned beyond recognition, was her daughter. Unfortunately, Jasmine suffered third degree burns and other serious injuries that required substantial immediate medical care.

14. Doctors at the Elvis Pressley Burn Center in Memphis, Tennessee, determined that Jasmine would require long-term hospitalization. While her vision loss was resolved after a period of three (3) days, Jasmine was forced to undergo numerous facial surgeries, skin grafts, and other medical procedures in an effort to reconstruct her face. These surgeries have included procedures for tissue removal, skin replacement, facial surgery, and ear reconstruction.

15. During Jasmine's third surgery on October 26, 2010 skin was removed from her right thigh and placed on the top of her head. In addition, layers of skin were added to her ears as well. Unfortunately, her ears have been permanently burned to the base of her head, requiring permanent ear transplants in the future. Jasmine will now be forced to wear wigs and seek a hair transplant to give the appearance that her natural hair has not been disfigured. While Jasmine has been the beneficiary of skin transplant to her head the transplant came via skin graft and skin from her thighs. To date, Plaintiff has accrued past medical bills in excess of $500,000.00.

16. Sadly, Jasmine Davis' testimony and product testing clearly supports that the Serum was the cause of Jasmine's avoidable accident. The L'Oreal product used by Jasmine is one that, at a minimum, has numerous marketing, labeling, and manufacturing defects. In summary, L'Oreal's failure to include warnings related to the flammability of the product was a direct cause of this accident.

17. Prior to filing suit, the Serum was tested to determine its flammability. Below is a summary of the findings:

Equipment/Apparatus Details:

- QTY 1- Avante Lace Front Human Hair Wig (Black, Straight)
- QTY 1- Annie Brand Medium Straightening Comb, #5504
- QTY 1- Heating eye on a natural gas stove

- QTY 1-5.1 oz. Garnier Fructis Sleek & Shine Anti-Frizz Serum
- QTY 1-Pair of Flame Resistant Gloves
- QTY 1-Pair of Protective Eye Goggles
- QTY 1- 3 Gallon Metal Can w/ Lid (to smother/ extinguish flame if needed)

Test Procedure:

- The test subject was evenly dispersed on a small section of the wig.
- The straightening comb was placed directly on the eye of a natural gas stove
- The straightening comb was heating for ~5 minutes at medium level.
- The straightening comb was then slowly "combed through" the section of hair that was moderately layered with the Sleek & Shine Anti-Frizz Serum. The comb-through process was followed through 3-4 times per section of hair.
- This test was repeated on 5 different sections of the hair with the straightening comb being re-heated after each application.

Test Conditions:

- The flammability test was performed in a home atmosphere in an attempt to duplicate the setting of the Plaintiff's environment.
- The wig was free of any other hair products (e.g., aerosols, gels, pomades, etc.)
- The straightening comb was new with no prior use and free of residue.
- The ambient temperature in the test area was between 75°F and 77°F and free of any aerial solvents.

Test Subject Background:

The two main ingredients in the Serum are cyclopentasiloxane and dimethiconol. The percentage of these two ingredients in the total formula is ~50-90% which is typical for anti-frizz and hair shine products. Both of these ingredients are combustible and should be kept away from heat and sources of ignition. This is clearly stated in the material safety data sheet for the two blended components. Additionally, the flashpoint for these materials is 171°F/ 77°C which means that that is the lowest temperature at which the vapor of these two liquid components can be made to ignite momentarily in air. The heat source in this case, the brass straightening comb, can easily be heated well above 171°F and there is no easy way to detect the actual temperature of the comb during use.

Actually, the minimum setting on most electric hot combs is 200°F with the maximum being around 450°F. Of course a straightening comb that is placed in direct heat from a natural gas or electric stove can yield much higher temperatures than their electric counterparts.

During the testing of this product, it was observed that the hair heated up very quickly and extreme levels of smoke filled the air as the comb was pulled through the hair that had been treated with the Serum. Smoke is the gaseous product of burning materials (especially of organic origin) made visible by small particles of carbon. In other words, when the hot comb is used on hair that has been treated with the test subject, the hair starts to burn as it is of organic nature and releases carbon particles (smoke) into the air. Testers found that Exhibit A shows the high level smoke that is instantly created when the hot comb is applied to the treated hair. In addition, in Exhibit B the flashpoint was definitely reached but was not able to be captured by a single-shot camera; however, the flashpoint visibility can be duplicated and visualized via streaming video. After performing the flammability test and reviewing the results it was determined one may possibly conclude that Garnier Fructis Sleek & Shine Anti-Frizz Serum is not suitable for use with any heated styling tools. Plaintiffs further allege that the Serum is definitely a flame/fire hazard and should be noted as such on the test subject label.

Upon information and belief, Plaintiff's third-degree burns and permanent disfigurement were caused by the Serum.

18. Plaintiff purchased the Garnier Fructis Anti-Frizz Sleek & Shine Serum at Wal-Mart store #714 in West Helena, Arkansas.

## V. CAUSES OF ACTION

### A. STRICT PRODUCTS LIABILITY

19. All of the allegations contained in the previous paragraphs are re-alleged herein.

20. On or before the aforementioned incident giving rise to this suit, L'Oreal designed, manufactured, marketed, sold and/or distributed the Serum for public use.

21. Plaintiff's injuries are a direct and proximate result of the negligence of L'Oreal and/or its predecessor-in-interest in that L'Oreal produced, sold and/or otherwise put into the stream of commerce the Serum at issue, which it knew, or in the exercise of ordinary care, should have known was defective and unreasonably dangerous for the intent of its purposes. (It is also foreseeable that the Serum would have been used in such a manner as Plaintiff's). L'Oreal was negligent in one, some or all of the following respects:

22. Failing to design and/or manufacture the Serum free of flammable chemicals.

23. Failing to provide warnings to the end-user and/or consumer that the Serum may ignite when applied to heat.

24. As a direct and proximate result of the incident made the basis of this lawsuit, Plaintiff continues to suffer damages, which will be shown by proof at trial.

### B. BREACH OF WARRANTY

25. All of the allegations contained in the previous paragraphs are re-alleged herein.

26. L'Oreal impliedly and expressly warranted the sale and marketing of the Serum at issue.

27. L'Oreal impliedly and expressly warranted that the Serum was fit for the intended ordinary purposes.

28. L'Oreal, in a reasonable course of investigation, should have known that consumers would have used the Serum as an every-day hair care product. Further, L'Oreal should have known that consumers would have used the Serum in a manner as Plaintiff's.

Davis vs. L'Oreal – Page 7

29. L'Oreal knew or reasonably should have known that consumers such as Plaintiff would rely upon the representations made by it regarding the suitability, merchantability and fitness of the Serum. L'Oreal knew that Plaintiff was entitled to rely upon the information imparted by it, including its failure to warn that the Serum was flammable.

30. Plaintiff did, in fact, rely upon the information provided by L'Oreal.

31. Plaintiff relied upon L'Oreal's knowledge, skill and judgment in furnishing the Serum. L'Oreal failed to disclose material information to the Plaintiff (i.e., that the Serum is flammable).

32. By selling, delivering and/or distributing such a product with proper warning, L'Oreal breached the express warranty and implied warranties of merchantability and fitness.

### C. STRICT PRODUCTS LIABILITY – FAILURE TO WARN

33. All the allegations in the paragraphs above and below are incorporated herein by reference for the benefit of Plaintiff's claims against L'Oreal.

34. L'Oreal had a duty to warn Plaintiff of risks and defects that were known.

35. L'Oreal knew or should have known of the risks and/or defects associated with the Serum.

36. L'Oreal failed to warn Plaintiff about the dangers of the Serum, namely that it is flammable.

37. L'Oreal's failure to warn proximately caused Plaintiff to purchase the dangerous Serum and to suffer the injuries and damages as alleged herein.

38. Plaintiff will show that L'Oreal acted with conscious disregard of the known risks by failing to warn of the defects, thereby entitling Plaintiff to exemplary damages.

### D. NEGLIGENCE

39. All the allegations in the paragraphs above and below are incorporated herein by

Davis vs. L'Oreal – Page 8

reference for the benefit of Plaintiff's claims against all L'Oreal.

40. L'Oreal owed a duty of reasonable care to Plaintiff to design, warn, manufacture, sell and/or distribute the Serum at issue in a condition that was safe for its intended purpose. L'Oreal breached its duty to Plaintiff by failing to warn, properly design, manufacture and sell the Serum at issue. As a direct and proximate result of L'Oreal's negligence, Plaintiff continues to suffer damages.

### E. INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

41. Plaintiff repeats and re-alleges the paragraphs above as if copied herein in full.

42. L'Oreal owed a legal duty of care to Plaintiff and committed the act(s) referenced herein.

43. L'Oreal knew, or should have known, that failure to exercise due care would cause Plaintiff severe emotional distress.

44. L'Oreal's conduct was directed at consumers, including Plaintiff in that it was intended to reach Plaintiff; it was negligent and/or reckless, extreme and outrageous; it was conducted without concern for Plaintiff (or without concern for such conduct's impact upon Plaintiff); and was done without concern for such conduct's likelihood of causing Plaintiff to suffer mental anguish, and/or emotional and physical distress at her current condition.

45. As a proximate result of L'Oreal's actions and the consequences proximately caused by them, as hereinabove alleged, Plaintiff suffered severe mental anguish, and/or emotional and physical distress, and has been injured in mind and body.

46. Therefore, L'Oreal is liable to Plaintiff in an action for intentional infliction of emotional distress pursuant to Arkansas statutory law and/or common law, thereby warranting an award of damages against L'Oreal.

Davis vs. L'Oreal – Page 9

## VI.
## DAMAGES

47. L'Oreal's conduct, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the Serum, and of the following general and special damages that Plaintiff has sustained, including but not limited to:

   a. The conscious physical pain and suffering and mental anguish sustained by Plaintiff;

   b. The disabilities and physical impairments suffered by Plaintiff;

   c. The disfigurement suffered by Plaintiff;

   d. Reasonable and necessary hospital and/or medical and/or pharmaceutical and/or other necessary expenses incurred by Plaintiff and/or her mother;

   e. The future care, maintenance, services, support, advice, counsel and consortium which Plaintiff will need in the future; and

   f. The mental anguish suffered by Plaintiff.

### PUNITIVE DAMAGES

45. Plaintiff also seeks punitive damages which are appropriate where the manufacturer knows its product would naturally or probably result in injury and continues to market it in reckless disregard of the consequences, as is the case here.

46. Because L'Oreal knew or should have known its conduct would naturally and probably result in injury, yet continued to market the Serum in reckless disregard, it should be subject to an award of punitive damages, to the highest amount permissible, under AMI 2218, Ark. Model Jury Instruc. (Thomson/West 2008).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against L'Oreal, for general damages, special damages, for punitive and exemplary damages, for their costs expended herein, for prejudgment interest and post judgment interest on the judgment at the rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

KELLEY WITHERSPOON, LLP
1700 Broadway St.
Little Rock, AR 72206
(501) 225-5669
(501) 225-5670 Facsimile
Kevin Kelley
Arkansas Bar No. 20100089
Britt Johnson
Arkansas Bar No. 2008059

BLAND LAW OFFICES
Vandell Bland, Sr.
Arkansas Bar No. 92062

ATTORNEYS FOR PLAINTIFF

FILED
At 11:35 O'Clock A M
JAN 14 2011
LYNN STILLWELL
PHILLIPS COUNTY CIRCUIT CLERK
BY_____ D.C.

## VERIFICATION

On this day personally appeared before me, the undersigned authority, Kevin Kelley, who swears and deposes upon his oath that he is counsel for Plaintiff, that he is more than 18 years of age and is competent to testify regarding each of the facts stated in this Complaint, that he has personal knowledge of the facts contained therein, and that said facts are true and correct.

_____
KEVIN KELLEY

STATE OF Arkansas       )
                        )
COUNTY OF Phillips      )

SWORN AND SUBSCRIBED BEFORE ME on this the 14 day of January 2011.

MY COMMISSION EXPIRES: 1-27-2011



OFFICIAL SEAL
LINDA WILLIAMS
No. 12369533
PHILLIPS COUNTY
My Commission Expires 1-27-2019

FILED
At 11:30 O'Clock PM
JAN 14 2011
LYNN STILLWELL CLERK
PHILLIPS COUNTY CIRCUIT
By_____ D.C.

Davis vs. L'Oreal – Page 12